IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01943-KAS

C.M.[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#8], filed September 27, 2022, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#10] (the "Brief"), Defendant filed a Response [#11] in opposition, and Plaintiff filed a Reply [#12]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **REVERSED AND REMANDED**.[2]

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#9]; *Reassignments* [#13, #14]; *Order of Reference* [#15].

## I. Background

On January 15, 2014, Plaintiff protectively filed an application for disability insurance benefits under Title II and for supplemental security income under Title XVI, alleging disability beginning November 26, 2013. Tr. 15.[3] On September 29, 2016, she received an unfavorable decision from an Administrative Law Judge ("ALJ"). Tr. 15-25. On April 1, 2019, this Court reversed the ALJ's decision and remanded for further proceedings. *[C.M.] v. Berryhill*, No. 17-cv-02995-WYD (D. Colo. Apr. 1, 2019); Tr. 731-44. On November 15, 2019, after remand, an ALJ made an unfavorable decision. Tr. 755-67. On September 8, 2020, the Appeals Council assumed jurisdiction and again remanded the case. Tr. 778-80. Finally, on June 14, 2021, an ALJ made an unfavorable decision. Tr. 588-607.[4] The Appeals Council denied review on May 31, 2022. Tr. 576-81.

The ALJ first determined that Plaintiff met the insured status requirements of the Act through June 30, 2016, and that she had not engaged in substantial gainful activity ("SGA") from November 26, 2013, through November 12, 2018. Tr. 591. The ALJ then found that Plaintiff suffers from four severe impairments: (1) degenerative disc disease of the lumbar spine, (2) bipolar disorder, (3) borderline personality disorder, and (4) mixed anxiety and depressive disorder. *Id*. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 8 through 8-13, by the sequential transcript numbers instead of the separate docket numbers. Also, citations to a brief's page numbers refer to the document's original numbering, not the numbering used by the CM/ECF docketing system.

[4] The ALJ noted that the Appeals Council had directed him to, among other things, "give further consideration to the claimant's age category throughout the period at issue and determine the appropriate medical-vocational guideline category or categories." Tr. 588.

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." Tr. 592.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work"[5] with the following exceptions:

> [C]an occasionally climb ladders, ropes, scaffolds, ramps, and stairs. She is able to frequently balance and crouch, and is able to occasionally stoop, kneel, and crawl. She is able to frequently reach overhead, bilaterally. The claimant is further limited in that she must avoid frequent use of moving and/or dangerous machinery, and must avoid frequent exposure to unprotected heights. She is further limited to work that consists of no more than semi-skilled work, of an SVP of 3 or 4. She is able to maintain sufficient attention and concentration for extended periods of 2-hour segments during a normal workday with normal breaks, but only in work that consists of no more than semi-skilled work of an SVP of 3 or 4. The claimant is further limited to work that requires no more than frequent interaction with the public, and to work that requires no more than occasional interaction with coworkers and supervisors. She is further limited to work that requires no more than occasional supervision, which is defined as requiring a supervisor's critical checking of her work.

Tr. 594. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that during the entire period, Plaintiff was capable of performing her past relevant work as a phlebotomist. Tr. 604. The ALJ found that "prior to attaining age 55," there were also other jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 605. He wrote that "prior to November 25, 2017, the date the claimant attained age 55, using the Medical-Vocational Rules as a framework supported

---

[5] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b) (same).

3

a finding that [Plaintiff] was 'not disabled,'" although he noted that "as of attaining age 55, Medical-Vocational Rule 202.02 directs a finding of disabled at Step 5. However, as previously noted in Finding 6, [Plaintiff] retained the ability to engage in past relevant work as a phlebotomist at all periods at issue." Tr. 605, 606.

Finally, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, and given the VE's testimony, there were a significant number of jobs in the national economy which Plaintiff could have performed, including the representative occupations of "Small Product Assembler," "Cleaner," and "Marker." Tr. 606. The ALJ therefore found that Plaintiff was not disabled at step four but made "alternative findings for step five of the sequential evaluation process, concerning [Plaintiff's] ability to perform other work prior to attaining age 55." Tr. 604-606.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically

4

determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter

been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

**A.     The Five-Step Framework**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most [the claimant] can still do despite [their]

6

limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4), 416.945(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "we review the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with

7

substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" separate from a lack of substantial evidence." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred (1) by finding that Plaintiff's return to work was probative of her functioning during the alleged period of disability; (2) by discounting Dr. Kristy Farnsworth's limitations for reasons that were not supported by substantial evidence; and (3) by giving significant weight to Dr. Joseph Carver's opinions but failing to account for his opinion that Plaintiff would have difficulty with complex instructions and concentration, persistence, and pace. *Brief* [#10] at iv. Because the Court finds that the first two arguments require the matter be remanded for further proceedings, it declines to address Plaintiff's argument about Dr. Carver's opinions.[6]

### A.   Plaintiff's Return to Work

Plaintiff argues that the ALJ erred by finding that her return to work as a phlebotomist was probative of her functioning during the alleged period of disability. *Brief* [#10] at 16 (citing Tr. 603). She points out that she was claiming disability for a closed period (from November 16, 2013, through November 12, 2018) and, after that period, she returned to work as a lab assistant, not as a phlebotomist. *Id.* at 16-17. Defendant

---

[6] *See, e.g.*, *Cross v. Colvin*, 25 F. Supp. 3d 1345, 1348 n.1 (D. Colo. 2014) (addressing "only so much of plaintiff's arguments as are sufficient to require reversal"); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (declining to "reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

responds that Plaintiff testified in 2021 that she worked as a phlebotomist and that her counsel should have clarified the record to the extent it was unclear. *Response* [#11] at 19.

The ALJ "considered the fact that [Plaintiff] was able to return to work as a phlebotomist at the end of the alleged closed period" and "[Plaintiff's] ability to return to work is probative of her functioning during the alleged period of disability." Tr. 603. He went on to say that "Plaintiff's functioning after the end of the alleged closed period is relevant and probative." Tr. 604. He concluded his discussion of step five by noting that "as previously noted in Finding 6, the claimant retained the ability to engage i[n] past relevant work as a phlebotomist at all periods at issue." Tr. 606. The ALJ appears to have relied on the apparent continuity of Plaintiff leaving work as a phlebotomist in 2013 and returning to work as a phlebotomist in 2018. *See, e.g.*, Tr. 603 ("[T]he record reflects only fairly minimal changes in objective findings before, during, and after the alleged closed period. As such, [Plaintiff's] ability to return to work is probative of her functioning during the alleged period of disability.").

However, as Plaintiff points out, this was a misreading of the record and her testimony. On October 29, 2019, almost one year after the alleged closed period of disability, Plaintiff testified that she was working as a "lab assistant." Tr. 625-26. The ALJ did not discuss Plaintiff's work as a lab assistant and did not consider whether it might reflect a different RFC than work as a phlebotomist. *See generally* Tr. 588-607. At the second oral hearing, on June 3, 2021, she testified she was working as a phlebotomist. Tr. 674-75. The record is not "unclear," as Defendant argues. *Response* [#11] at 19. Nor

is her testimony self-contradictory on its face—nearly two years had passed, and her employment situation may have changed.

To the extent the ALJ's step four past relevant work determination was based on "the fact that the claimant was able to return to work *as a phlebotomist* at the end of the alleged closed period," it was not supported by substantial evidence. Tr. 603; *see Scrivner v. Berryhill*, 323 F.R.D. 663, 665 (D.N.M. 2018) (noting that a court's examination of the record "must include 'anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met.'") (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)). Because Plaintiff is only claiming disability through November 2018, "[t]he dispositive question is, therefore, whether she could return to her past relevant work *on or prior to that time*." *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360 (10th Cir. 1993). Plaintiff aptly points out that her "ability to return to work as a phlebotomist *in 2021* does not show that she had the ability to work as a phlebotomist during the alleged closed period of disability." *Reply* [#12] at 9 (emphasis added). It appears the ALJ gave significant weight to Plaintiff's return to work as a phlebotomist *in 2018*, a finding that was not supported by her testimony. *See, e.g.*, Tr. 603-04, 606. Even Defendant seems to recognize how important this finding was to the ALJ's opinion. *Response* [#11] at 17 ("The ALJ found that Plaintiff was laid off from her prior phlebotomist position and returned to that job in 2018 ([Tr.] 98, 595, 603, 626, 1033).").

Accordingly, the Court finds error in the ALJ's step four analysis because the finding that Plaintiff returned to work in 2018 *as a phlebotomist* was contradicted by Plaintiff's testimony, and thus not supported by substantial evidence.

10

**B.     Dr. Farnsworth**

Plaintiff argues that the ALJ's reasons for discounting Dr. Farnsworth's opinions (i.e., giving them only moderate weight) were not supported by substantial evidence. *Brief* [#10] at 9.

As relevant here, Dr. Farnsworth testified that Plaintiff could only occasionally interact with the public, coworkers, and supervisors. Tr. 809. However, in later interrogatories, Dr. Farnsworth checked "None" for limitations on "interact[ing] appropriately with the public." Tr. 568. She added that Plaintiff "interacts well with care providers. Occasional mood instability and irritability impact social interactions." *Id.* The ALJ noted the inconsistency between the testimony and the responses but apparently did not follow up with Dr. Farnsworth. Tr. 601.

The ALJ gave Dr. Farnsworth's opinion moderate weight, in part because those opinions were "provided in June and July 2016 [and] reflected the claimant's functioning through that point." *Id.* He referenced records from 2017 noting improved energy when the claimant was taken off of lithium and mental status findings indicating an "improved and euthymic" mood. *Id.* (citing Tr. 1268, 1271, 1273, 1275, 1276, 1278, 1282). He also noted that "in functional terms" Plaintiff was able to help her father after a heart attack and to care for her boyfriend after surgery, "suggesting an ability to perform more than just simple repetitive tasks." Tr. 601-02 (citing Tr. 1291, 1217, 1255).[7] Those records are from December 2017 and September-October 2018 respectively. Tr. 1291, 1217, 1255.

---

[7] The ALJ cited "C15F/37, 75" for the reference to Plaintiff caring for her boyfriend after surgery. As the parties have noted, there is no such reference on that page. Instead, the ALJ was referring to Tr. 1217 and 1255. *See, e.g., Response* [#11] at 18.

11

The Court does not find error in the ALJ declining to follow up with Dr. Farnsworth. Under current regulations, recontacting a medical source is optional. See 20 C.F.R. §§ 404.1520b(b)(2)(i), 416.920b(b)(2)(i). It is not generally necessary if the record "contain[s] all the information [the agency] need[s] to make [its] determination or decision." 20 C.F.R. §§ 404.1520b(b), 416.920b(b). Plaintiff has not shown that the record, as a whole, was insufficient to determine her RFC, such that recontacting Dr. Farnsworth was necessary.

However, Plaintiff is correct that the ALJ made a "conflicting finding about improvement." *Brief* [#10] at 14. On the one hand, he wrote that "the record reflects only fairly minimal changes in objective findings before, during, and after the closed period," therefore "[Plaintiff's] ability to return to work is probative of her functioning during the alleged period of disability." Tr. 603. On the other hand, he found Dr. Farnsworth's opinions only reflected Plaintiff's functioning through 2016 and did not account for improvements in 2017 and 2018, such as her improved energy when taken off lithium; her improved mood; and her later ability to help her father after a heart attack and her boyfriend after surgery. Tr. 601-02 (citations omitted). The Court sees two problems here: First, even if Plaintiff improved in 2017 and 2018, that does not mean that Dr. Farnsworth's opinions in mid-2016 were invalid or inaccurate. Plaintiff is claiming a closed period of disability from 2013 to 2018, not an indefinite disability, so some improvement towards the end of that period does not necessarily undermine her claim. Tr. 589. Second, if post-2016 changes in Plaintiff's functioning were large enough to support the ALJ discounting Dr. Farnsworth's opinions, then they cannot be described as "fairly minimal changes." *Brief* [#10] at 13-14.

The Court finds that the ALJ erred by making conflicting findings around Dr. Farnsworth's opinions, especially to the extent that these findings intertwine with the misapprehension that Plaintiff returned to work as a phlebotomist in 2018.

## C. Harmless Error

Because the Court has found two errors in the ALJ's decision, the next question is whether those errors require reversal. Defendant generally argues that the Court should apply a harmless error standard in its review, pursuant to 28 U.S.C. § 2111 and *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009). *Response* [#11] at 7. The Tenth Circuit has applied the harmless error standard in social security disability cases "though not always by name and without settling on a definitive characterization of its precise contours and range of application in this somewhat unique, nonadversarial setting." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In this circuit, harmless error analysis "may be appropriate to supply a missing dispositive finding in the right exceptional circumstances, *i.e.*, where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id*. However, courts should not *post hoc* rationalize the ALJ's findings: "[t]he ALJ's decision should [be] evaluated based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962)).

### 1. Step Four Analysis

Reviewing the ALJ's decision as a whole, the Court cannot avoid the conclusion that the ALJ's misapprehension that Plaintiff returned to work *as a phlebotomist in 2018* tainted his step four analysis. First, the ALJ made an express finding that was contradicted

13

by Plaintiff's testimony: "the undersigned also considered the fact that [Plaintiff] was able to return to work as a phlebotomist at the end of the alleged closed period." Tr. 603; *cf.* 625-26. This finding was plainly not supported by substantial evidence. *Glenn v. Apfel*, 102 F. Supp. 2d 1252, 1256 (D. Kan. 2000) ("Evidence is insubstantial if it is overwhelmingly contradicted by other evidence.") (citation omitted); *Biestek v. Berryhill*, 587 U.S. ----, 139 S. Ct. 1148, 1159 (2019) (Gorsuch, J., dissenting) (stating that "clearly mistaken evidence" or evidence "that's clearly wrong as a matter of fact cannot be substantial evidence"). To the extent that the ALJ's decision rested on this faulty basis, it was unsupported by substantial evidence.

The ALJ found Plaintiff's return to work "probative of her functioning during the alleged period of disability" and, relatedly, found "only fairly minimal changes in objective findings before, during, and after the alleged closed period." Tr. 603. The ALJ repeatedly emphasized the continuity of Plaintiff's functioning, apparently not realizing that Plaintiff had returned to work in 2018 *in a different role*. Tr. 604 (noting that "[Plaintiff's] objective mental status findings are so similar before, during, and after the alleged closed period [that Plaintiff's] functioning after the end of the alleged closed period is relevant and probative"). Even Defendant noticed a connection between the ALJ's return-to-work finding with his finding of continuity in the records. *Response* [#11] at 17 ("[T]he ALJ found that Plaintiff was laid off from her prior phlebotomist job and returned to that job in 2018. The ALJ found that there was no clear onset of disability in November 2013, no clear improvement of symptoms as of the end of November 2018, and only fairly minimal changes in objective findings before, during, and after the closed period.") (citations to transcript omitted). Perhaps Plaintiff's employment as a lab assistant was similar enough

14

to her work as a phlebotomist that it would not have affected the ALJ's past relevant work findings, or perhaps it was less skilled or less demanding work, which might tend to show a change in Plaintiff's functioning during the alleged closed period. The ALJ considered Plaintiff's "return to work" to be probative but did not discuss the fact that she returned in a different role. The Court cannot be sure that the ALJ's step four analysis was not impacted by this oversight.

This directly ties into the second error: the ALJ's contradictory findings regarding Dr. Farnsworth. As the Court discussed previously, the ALJ gave Dr. Farnsworth's opinions only "moderate weight." Tr. 601-02. He noted that Dr. Farnsworth's testimony and interrogatory responses were "at best" only reflective of Plaintiff's functioning through mid-2016, and he pointed to evidence of subsequent improvements in Plaintiff's energy, mood, and ability to perform "more than simple repetitive tasks". Tr. 601-02. Plaintiff aptly notes that subsequent improvements do not, alone, diminish the validity or accuracy of Dr. Farnsworth's opinions in 2016, and points out that she is claiming a closed period of disability. *Brief* [#10] at 13-14. Even Defendant acknowledges that "the ALJ's articulation of this reason for discounting Dr. Farnsworth's opinion could have been better." *Response* [#11] at 16.

However, the ALJ went on to note that the record reflected "only minimal changes in objective findings before, during, and after the alleged closed period" such that Plaintiff's "return to work is probative of her functioning during the alleged period of disability." Tr. 603. The ALJ later added, "[a]s [Plaintiff's] objective findings are so similar both before, during, and after the alleged closed period, [her] functioning after the end of the alleged closed period is relevant and probative." Tr. 604. Thus, the ALJ found that

15

Plaintiff's functioning improved during the closed period such that Dr. Farnsworth's 2016 opinions were no longer useful, while simultaneously finding that there was essentially no change in Plaintiff's functioning before, during, and after the closed period. Tr. 603, 604.

A contradiction like this might otherwise be harmless in the context of an ALJ's entire decision, but here it ties directly into the ALJ's erroneous return-to-work finding. The ALJ appears to have begun with the assumption that Plaintiff had left work in 2013 before returning to the same job in 2018. Tr. 603. This informed his finding that Plaintiff's functioning before, during, and after the closed period were essentially continuous. Tr. 603-04. Thus, he relied on Plaintiff's return to work and her level of functioning in 2018 as probative and relevant evidence of her functioning throughout the whole closed period. *Id.* To the extent that Dr. Farnsworth's opinions showed that Plaintiff had more serious limitations in 2016 than either before or after the closed period (November 16, 2013-November 12, 2018), the ALJ discounted those opinions. Tr. 601-02. As a basis to discount Dr. Farnsworth's opinions, though, the ALJ cited records which showed improvement in 2017 and 2018—including notes of "improved energy" and a mental status finding of "improved mood." *Id.* (citing Tr. 1268, 1271, 1273, 1275, 1276, 1278, 1282). However, if the records show enough improvement after Dr. Farnsworth's testimony and interrogatory responses to discount her opinions, then it is contradictory to find that "objective mental status findings are so similar both before, during, and after the alleged closed period" and that there are "only fairly minimal changes in objective findings before, during, and after the alleged closed period." Tr. 604, 603.

The Court must evaluate the ALJ's decision based on the reasons in his opinion. *Robinson*, 366 F.3d at 1084. In this circumstance, the Court declines to "supply a missing

16

dispositive finding under the rubric of harmless error." *Allen*, 357 F.3d 1140, 1145 (10th Cir. 2004). The ALJ's step four analysis heavily relied on the assumption that Plaintiff returned to work *as a phlebotomist* in 2018, the same job she had left in 2013. Accordingly, the ALJ's step four finding is not based on substantial evidence.

### 2. Step Five Alternate Analysis

The ALJ noted that he had been directed by the Appeals Council to, among other things, "give further consideration to the claimant's age category throughout the period at issue and determine the appropriate medical-vocational guideline category or categories." Tr. 588. So, after its step four analysis, the ALJ went on to make "alternate findings for step five of the sequential evaluation process, concerning the claimant's ability to perform other work prior to attaining age 55." Tr. 605. He noted that "[Plaintiff] was born on April 16, 1962 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date." *Id.* (citing 20 C.F.R. § 404.1653). The ALJ wrote that he "must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2." *Id.*

The ALJ noted that "prior to attaining age 55, [Plaintiff] was capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and "as of attaining age 55, Medical-Vocational Rule 202.02 directs a finding of disabled at step 5. However, as previously noted in Finding 6, the claimant retained the ability to engage i[n] past relevant work as a phlebotomist at all periods at issue." Tr. 606. Of note, Plaintiff turned 55 during the alleged closed period of disability, albeit after the last insured date. Tr. 589 (requesting a closed period of disability from November 13,

17

2013, through November 12, 2018); *cf.* Tr. 591 (finding a last insured date of June 30, 2016).

The Court's role is not to guess, or to supply a missing finding for the ALJ—it can only evaluate the reasons he has presented. *Allen*, 357 F.3d at 1145; *Robinson*, 366 F.3d at 1084. Here, the ALJ expressly incorporated "Finding 6", his finding that Plaintiff had the ability to engage in past relevant work *as a phlebotomist*, into his step five analysis. Tr. 606. The Court is unable to discern whether the ALJ's step five analysis would have differed if he had not relied on his step four past relevant work finding. After all, Plaintiff reached age 55 after the last insured period but before the end of her claimed disability period and before adjudication,[8] and the ALJ indicated that the medical-vocational rules would have directed a finding of disabled at step five once she turned 55. Tr. 606. The ALJ did not make such a directed finding *because of his past relevant work finding*. *Id.* Under these circumstances, based on the ALJ's stated rationale, the Court cannot find the step four error was harmless or that the step five findings were independently sufficient. Accordingly, the Commissioner's step five finding must be **reversed and remanded** for further proceedings.

## IV. Conclusion

Based on the foregoing,

---

[8] The ALJ found a last insured date of June 30, 2016, which was when Plaintiff was 54 years and 2 months old. Tr. 589. The date of adjudication was nearly five years later, when she was 59 years old. Tr. 607.

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.[9]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and close this case.

Dated: March 29, 2024                           BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

---

[9] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled. *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).